IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHARLES NOLEN TANKERSLEY, Jr., ) <br> ) <br> Plaintiff, ) <br> ) <br> v.  ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO.: 3:13cv805-WC |

# MEMORANDUM OPINION

**I.    INTRODUCTION**

Charles Nolen Tankersley ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which the ALJ found Plaintiff not disabled from the alleged onset date of March 31, 2010, through the date of the decision. Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case

---

[1]   Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 13); Def.'s Consent to Jurisdiction (Doc. 12). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

---

[3] *McDaniel*, is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

3

or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

## III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-seven years old at the time of the hearing before the ALJ, and had completed the twelfth grade.  Tr. 54.  Following the administrative hearing and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since March 31, 2010, the alleged onset date."  Tr. 25.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "carpal tunnel syndrome status post bilateral release; right knee meniscal tear; left lateral epicondylitis; degenerative joint disease of the left shoulder; partial tear right shoulder status post repair; herniated nucleus pulposus in L5-S1; and sacroiliac radiculopathy[.]"  *Id.*  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  *Id.*  Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) except the claimant must have an at will sit/stand option.  He can sit for two hours at one time and up to four hours in an eight-hour day.  He can stand for one hour at one time and up to two hours in an eight-hour day.  He can walk for one hour at one time and up to two hours in an eight-hour day.  He can frequently lift up to ten pounds and occasionally lift up to 20 pounds.  He can occasionally carry from zero up to 20 pounds.  He can occasionally use his hands for repetitive action such as in simple grasping and for fine manipulation.  He can frequently use his hands for repetitive action such as in the pulling of arm controls and reaching (including overhead).  He can frequently use his feet for repetitive movement such as in the pushing and pulling of leg controls.  He can occasionally climb stairs and ramps and never climb ladders or scaffolds.  He can frequently balance, stoop, kneel,

>crouch, and crawl. He can never work around unprotected heights; occasionally work around moving machinery and drive automotive equipment; and frequently work around exposure to marked changes in temperature and humidity, and exposure to dust, fumes, and gases. The claimant experiences a moderate degree of pain.

*Id.* at 29. After consulting the VE, the ALJ concluded at Step Four that Plaintiff "is unable to perform any past relevant work[.]" *Id.* at 40. Finally, at Step Five, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" *Id.* at 41. Based upon the testimony of the VE, the ALJ identified the following as representative occupations: "counter rental clerk," "machine tender," and "ticket taker." *Id.* Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 31, 2010, through the date of th[e] decision." *Id*. at 42.

## IV. PLAINTIFF'S CLAIM

Plaintiff presents one issue for this court's consideration in review of the ALJ's decision. He contends that the ALJ failed to properly evaluate the opinion of his treating physician, and that, had the ALJ given his treating physician's opinion proper weight, "the ALJ would have found Plaintiff disabled based upon" the limitations indicated in the physician's opinion. Pl.'s Br. (Doc. 9) at 4.

## V.     DISCUSSION

In general, "[a]bsent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel v. Comm'r, Soc. Sec. Admin.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). If the ALJ disregards a treating physician's opinion, or affords it less than "substantial or considerable weight," the ALJ must "'clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41).

The treating physician opinion which Plaintiff contends the ALJ failed to properly evaluate is that of Dr. Corbin,[5] who completed a Physical Capacities Evaluation ("PCE") which was drafted and provided by Plaintiff's counsel. *See* Tr. 380-81. In pertinent part, Dr. Corbin opined that Plaintiff could sit for no more than two total hours in an eight hour work day, and that he could stand or walk for no more than two hours in an eight hour workday. Tr. 380. In addition, Dr. Corbin completed a Clinical Assessment of Pain, which was also drafted and submitted by plaintiff's counsel, in which he opined that physical activity, "such as prolonged sitting, walking, standing, bending, stooping,

---

[5] Plaintiff affirmed the ALJ's description of Dr. Corbin as his "general practitioner." Tr. 65.

7

moving of extremities, etc.," would cause Plaintiff "[g]realty increased pain and to such a degree as to cause distraction from tasks or total abandonment of tasks." Tr. 382.

> In addressing Dr. Corbin's opinion, the ALJ explained as follows:
>
> I have considered and given little evidentiary weight to the opinion of Dr. Corbin, who provided a residual functional capacity assessments [sic], and treatment records (Exhibit 9F & 11F). Dr. Corbin is a treating physician whose opinion is inconsistent with the above-discussed evidence. His opinion is also inconsistent with his own treating records. For example, in 2006, Dr. Corbin stated that the claimant's left shoulder was doing well. Further, in December 2009, the claimants['] DOT physical was normal and there were no contraindications. His opinion is also unsubstantiated by any clinical or laboratory findings and it is not accompanied by objective medical evidence. As indicated above, I give greater weight to the opinion of the examining neurologist [Dr. Hakim] who is an expert in examining these types of impairments. Therefore, the undersigned gives little weight to the opinion of Dr. Corbin.

Tr. 40. Thus, the ALJ articulated three distinct bases for its rejection of Dr. Corbin's opinion, including 1) it is inconsistent with other evidence in the record, 2) it is inconsistent with Dr. Corbin's own treatment records, and 3) it is not based upon any "clinical or laboratory findings" and is not "accompanied by objective medical evidence." *Id.*

> Plaintiff contends that the ALJ erred, arguing as follows:
>
> The ALJ's rationale for rejecting this opinion is questionable given that Plaintiff's alleged onset date is March 31, 2010. Whether Plaintiff's shoulder was "doing well" in 2006, or that Plaintiff had a normal DOT physical in 2009 is not material to whether Plaintiff became disabled at a later date, and does not provide a basis for the ALJ to reject a treating source opinion.

Pl.'s Br. (Doc. 9) at 10.  Of course, as set forth above, the ALJ relied upon more than just records predating Plaintiff's alleged disability onset date in discounting Dr. Corbin's opinion.  In particular, the ALJ found that Dr. Corbin's opinion was inconsistent with the great weight of other medical evidence in the record, especially the opinion of the consultative examiner, Dr. Hakim, which the ALJ found to be "consistent with records and reports obtained from the claimant's treating physicians and with the evidence as a whole."  Tr. 39.[6]  Moreover, as the ALJ noted, apart from Dr. Corbin's opinion, "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision."  Tr. 39.

Nevertheless, Plaintiff argues that "the opinion of Dr. Corbin is fully supported by the evidence of record from numerous sources[.]"  Pl.'s Br. (Doc. 9) at 10-11 (citations and internal quotations omitted).  However, rather than discussing in detail these "numerous sources" of record evidence and explaining why he believes they validate Dr.

---

[6]  As noted by the ALJ, *see* Tr. 34-36, Dr. Hakim conducted an extensive consultative examination of Plaintiff. In addition to a physical examination, Dr. Hakim performed a Nerve Conduction Velocity Test and electromyography on Plaintiff's extremities.  Tr. 348.  Dr. Hakim found that Plaintiff's right carpal tunnel was "mild-to-moderate in nature," left carpal tunnel was "moderate in nature," and "found no evidence of lumbar radiculopathy or peripheral neuropathy[.]" *Id.* He surmised that Plaintiff's back pain "appeared musculoskeletal in nature" because he "could not document a radiculopathy per the EMG test or neurologic examination." *Id.* Likewise, Dr. Hakim "could not document evidences of cervical radiculopathy per the EMG test performed today." *Id.*  Based upon his findings, Dr. Hakim completed a PCE which, in pertinent part, indicates that Plaintiff can frequently lift up to 10 pounds, occasionally lift up to twenty pounds, occasionally carry up to twenty pounds, can sit for up to four hours in an eight hour day, and can stand and walk for up to two hours each in an eight hour work day.  Tr. 351-

Corbin's opinion, Plaintiff cites only two pieces of record evidence and those pieces are not as compelling as he portrays them to be. The first is a letter dated April 16, 2010, from Plaintiff's chiropractor, in which the chiropractor states that Plaintiff "has a history of wrist problems . . . as well as bilateral shoulder problems" and "chronic neck and lower back pain." Tr. 328. The chiropractor further states that Plaintiff "has difficulties performing work functions particularly related to lifting or moving heavy objects or with repetitive use of the hands, wrists, or shoulders." *Id.* The ALJ included the chiropractor's letter in its discussion of the evidence. *See* Tr. 34. Notably, there do not appear to be any other records or treatment notes from the chiropractor in the transcript of evidence, despite the letter's description of a several-year patient relationship with Plaintiff concerning "multiple health problems related to the spine, shoulders, wrists, lower back, and neck." Tr. 328. Thus, the court is unable to assess whether the chiropractor's statements are reliably supported by his own treatment records. Furthermore, to the extent Plaintiff offers the statement of his chiropractor as medical evidence of disability or as corroboration of Dr. Corbin's medical opinion, "the ALJ has no duty to give significant or controlling weight to a chiropractor's views because, for SSA purposes, a chiropractor is not a 'medical source' who can offer medical opinions." *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012) (unpublished

---

52.

decision). Accordingly, the chiropractor's statement does not demonstrate that the ALJ lacked good cause in discounting Dr. Corbin's opinion.

The other piece of record evidence Plaintiff proffers as supporting Dr. Corbin's opinion is Dr. Corbin's own treatment note from June 17, 2011, in which Dr. Corbin notes Plaintiff's "subjective" complaint that he "has significant problems w/ chronic neuropathic pain and orthopedic issues to the point of disability now having increased problems w/ pain and numbness bilaterally down both arms with numbness and weakness in both hands." Tr. 360. The ALJ noted this record in its review of the evidence. *See* Tr. 36. Plaintiff does not explain how his own subjective complaint to Dr. Corbin could constitute "full[] support[]" for Dr. Corbin's subsequent opinion which was discounted by the ALJ. It is evident that Plaintiff's subjective complaint to Dr. Corbin cannot suffice as the sort of "clinical or laboratory findings" or "objective medical evidence" the lack of which the ALJ specifically cited in discounting Dr. Corbin's opinion. Accordingly, the content of Dr. Corbin's treatment note describing Plaintiff's subjective complaints does not demonstrate that the ALJ lacked "good cause" in discounting Dr. Corbin's opinion.

Plaintiff next asserts that, even if the ALJ found Dr. Corbin's opinion inconsistent with his treatment records or other medical evidence, it was "egregious error" for the ALJ to discount Dr. Corbin's opinion "without first recontacting Dr. Corbin" in order to obtain clarification from Dr. Corbin on the basis of his opinion because, purportedly, Dr. Corbin was providing an opinion on an issue reserved to the Commissioner. Pl.'s Br.

11

(Doc. 9) at 11.  However, the ALJ's failure to recontact a treating source does not warrant remand unless "'the record reveals evidentiary gaps which result in unfairness or clear prejudice.'  The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports [his] allegations of disability.'"  *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).  It appears that the ALJ was in possession of all of Dr. Corbin's records, and Plaintiff does not contend that there are additional, undisclosed records from Dr. Corbin which would have shed light on the basis for his opinion.  Nor is there any requirement that the ALJ recontact a treating source merely to procure an explanation for a treating source's opinion which is not borne out by the source's treatment records or other medical evidence in the record.  Finally, substantial evidence—namely plaintiff's medical records from other treating sources and, particularly, the opinion of the neurologic specialist Dr. Hakim—supports the ALJ's decision.  As such, the ALJ did not have a duty to recontact Dr. Corbin.

Plaintiff's contention that Dr. Corbin was providing an opinion on an issue reserved for the Commissioner, and therefore was due to be recontacted pursuant to SSR 96-5p, is unsupported by the evidence.  Presumably, Plaintiff is asserting that Dr. Corbin's PCE constitutes an opinion on either Plaintiff's RFC or whether he is disabled, both of which are determinations reserved to the Commissioner.  However, Dr. Corbin's PCE only describes the limitations which he attributes to Plaintiff.  It does not indicate

Plaintiff's RFC and makes no conclusions about whether he is disabled. It is Plaintiff, not Dr. Corbin, who interprets Dr. Corbin's opinions about Plaintiff's limitations and concludes that it supports his claim of disability. Thus, the court cannot conclude that any duty to recontact pursuant to SSR 96-5p was indeed implicated. In any event, even if Dr. Corbin's opinion could be construed as an opinion on matters reserved to the Commissioner, as discussed above, the ALJ's decision not to recontact the treating source warrants remand only if "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown*, 44 F.3d at 935. As the court has already concluded that no such evidentiary gaps are indicated in the record, or even alleged by Plaintiff, the court cannot conclude that the ALJ erred in failing to recontact Dr. Corbin despite Dr. Corbin's purported opining on matters reserved to the Commissioner.

In sum, the ALJ's decision is supported by substantial evidence in the record, and Plaintiff has failed to show that the ALJ lacked "good cause" in discounting the opinion of Dr. Corbin.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 9th day of October, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

14